UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NICKLOS D.,[1]                              )
                                           )
              Plaintiff,                    )
                                           )
        v.                                 )          No. 1:22-cv-01064-RLY-KMB
                                           )
KILOLO KIJAKAZI, Acting Commissioner       )
of the Social Security Administration,     )
                                           )
              Defendant.                    )

**ENTRY ADOPTING REPORT AND RECOMMENDATION**

Plaintiff Nicklos D. initially applied for disability insurance benefits in March of

2013.  His application was denied, and he appealed to this court, which reversed and

remanded.  This process repeated.  During the third set of proceedings before an ALJ,

Nicklos requested a medical expert be called to testify regarding new medical evidence

he submitted.  The ALJ denied this request, analyzed the evidence herself, and concluded

Nicklos was not disabled.  Because Nicklos did not file written exceptions and because

the Appeals Council did not review the ALJ's decision on its own motion, the ALJ's

decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.984.

Nicklos timely filed this civil action under 42 U.S.C. § 405(g) for review of that

final decision.  (*See* Filing No. 1, Compl.).  The court referred the matter to Magistrate

_____

[1] To protect the privacy interest of claimants for Social Security benefits, consistent with the
recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States Courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.

Judge Barr on November 10, 2022, pursuant to 28 U.S.C. § 636(b)(1)(B).  (Filing No. 11).  After carefully applying Seventh Circuit precedent, Judge Barr recommended the court reverse the Commissioner's decision and remand to the agency for further proceedings.  Specifically, Judge Barr cogently explained that the facts of this case required the ALJ to rely on an expert's medical opinion to interpret the new medical evidence.[2]  The Commissioner objects on the ground that this result contravenes agency regulations and recent Seventh Circuit precedent.[3]  The court does not agree.  The ALJ's failure to rely on expert medical opinion in deciding that Nicklos' new medical evidence did not render him disabled resulted in her improperly "playing doctor."  *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence.").  Accordingly, her opinion was not supported by substantial evidence, and remand is appropriate.

I.      **Background**

        Nicklos initially applied for disability insurance benefits from the Social Security Administration in 2013, alleging an onset date of March 17, 2012.  (Filing No. 7-3 at 4).  By 2015, an ALJ concluded Nicklos was not entitled to receive disability benefits.  (Filing 7-2 at 14–39).  Nicklos filed a complaint with this court, and the court

---

[2] Nicklos also argues the ALJ improperly analyzed the opinions of Nicklos' medical providers.  The Magistrate Judge did not substantively address this issue because Nicklos' first argument was successful.  The court agrees that discussion of this issue is unnecessary given that the ALJ's failure to rely on expert medical testimony is dispositive on these facts.

[3] Nicklos filed his response to the Commissioner's objection on August 22, 2023, and the Commissioner did not submit a reply brief, nor move for additional time, within the seven-day limit imposed by Local Rule 7-1(c)(3)(B).  The court considers any reply waived.

subsequently reversed and remanded to the agency. *Nicklos D. v. Berryhill*, No. 1:16-cv-2783-MPB-TWP, Filing Nos. 29, 30 (S.D. Ind. Aug. 17, 2017). On remand, a second ALJ concluded Nicklos was not entitled to disability benefits. (Filing No. 7-9 at 17). Nicklos filed another complaint with this court, which again reversed and remanded. *Nicklos D. v. Saul*, 1:19-cv-419-MJD-JMS, Filing Nos. 14, 15 (S.D. Ind. July 16, 2019). Nicklos' second remand hearing was held before the same ALJ on December 14, 2021. (Filing No. 7-16 at 40). At that hearing, Nicklos amended his alleged onset date to August 19, 2021. (*Id.* at 46–47).

Nicklos was born in 1971 and was 50 years old at the alleged onset of his disability in 2021. (Filing No. 7-16 at 23). He has a high school education and previously worked as a carpenter. (*Id.* at 22–23). In her analysis, the ALJ followed the five-step disability evaluation provided by 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). (*Id.* at 8–26). The ALJ concluded Nicklos was not disabled. (*Id.* at 26). Specifically, at step one the ALJ found Nicklos had not engaged in substantial gainful activity since his onset date of August 19, 2021. (*Id.* at 8). At step two, the ALJ explained Nicklos was severely impaired due to his right knee osteoarthritis, his status post arthroplasty with partial meniscectomy, his meniscal tear, his multiple sclerosis, and his degenerative disc disease of the cervical and thoracic spines. (*Id.* at 12). The ALJ concluded that Nicklos' impairments did not meet or medically equal the severity of any listing at step three. (*Id.*).

Prior to step four but after step three, the ALJ determined Nicklos' residual functional capacity ("RFC"). (*Id.* at 13). Specifically, she found Nicklos had the ability:

3

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Nicklos] could lift and/or carry twenty pounds occasionally and ten pounds frequently, sit for two hours at a time for a total of six hours in an eight-hour workday, stand for two hours at a time for a total of six hours in an eight-hour workday, and walk for two hours at a time for a total of six hours in an eight-hour workday, with customary breaks. [Nicklos] could occasionally bend, crouch, squat, stoop, and climb stairs, but never kneel or crawl. [Nicklos] could never climb ladders, ropes, or scaffolds. He could occasionally drive, but only occasionally use foot controls on the left and never on the right. [Nicklos] could frequently perform fine and gross manipulation bilaterally. He must avoid any exposure to unprotected heights.

(*Id.* at 22). Per this RFC, the ALJ concluded Nicklos could not perform any past relevant work at step four. (*Id.* at 22–23). But at step five, the ALJ found there were jobs that exist in significant numbers in the national economy that Nicklos can perform with his RFC. (*Id.* at 23–25). Thus, Nicklos was not disabled at any time between the amended date of onset and the date of the decision. (*Id.* at 25).

Nicklos' complaint focuses on the ALJ's process for determining his RFC. (Filing No. 9, Pl.'s Op. Br. at 1). Following the first remand to the agency, the ALJ concluded Nicklos had an RFC that allowed him to "stand[] and walk[] (in combination) up to six (6) hours and sit[] up to six (6) hours in an eight (8) hour workday with normal breaks." (Filing No. 7-9 at 12). Following the second remand to the agency, the ALJ concluded Nicklos' could "stand for two hours at a time for a total of six hours in an eight-hour workday, and walk for two hours at a time for a total of six hours in an eight-hour workday, with customary breaks." (Filing No. 7-16 at 22). In other words, Nicklos' RFC was materially the same before and after the second remand. The parties agree that if

Nicklos could only stand for less than six hours, he would likely be *per se* disabled given his age.  (Filing Nos. 9 at 16–17; 15 at 13 n.2; 18 at 2).

But between the second and third hearings before the agency, Nicklos suffered complications to his varying conditions.  (*See generally* Filing No. 7-16).  These complications resulted in four new pieces of medical evidence that Nicklos submitted to support his claim for disability: (1) a 2021 MRI of his right knee that demonstrated a posterior horn medial meniscus tear extending to the inferior surface, (2) a 2021 MRI of Nicklos' cervical spine that showed degenerative changes at C4-C5 and C5-C6 among other degenerative changes, (3) a 2021 cardiac angiogram, and (4) a 2021 MRI of Nicklos' brain that created a concern for worsening demyelinating plaque.  (*Id.* at 14–16).  Despite Nicklos' request that a medical expert be called to evaluate the new evidence, the ALJ proceeded without obtaining additional medical opinions.  (*Id.* at 6).  The ALJ did not provide significant analysis explaining how these pieces of evidence factored into her conclusion about Nicklos' RFC.  (*See id.* at 14–17).  The ALJ did, however, discuss the expert medical testimony of state agency medical consultants who examined Nicklos prior to 2021, meaning those experts did not have the opportunity to consider the new evidence.  (*Id.* at 17–21).  The ALJ concluded these assessments supported her RFC finding.  (*See id.* at 22).  Therefore, the ALJ must have concluded—without medical testimony suggesting as such—that Nicklos' new medical evidence did not affect his RFC.

Magistrate Judge Barr held this was error.  (Filing No. 20 at 12).  In her opinion, because the medical evidence suggested Nicklos was becoming more disabled, had not

been reviewed by medical experts, and was potentially decisive evidence, the ALJ could not have had substantial evidence supporting her RFC determination. (*Id.* at 6–7). Judge Barr therefore recommended the court reverse the Commissioner's decision and remand to the agency to allow the ALJ the opportunity to consider medical opinions as to whether Nicklos' new medical evidence renders him disabled. (*Id.* at 12). The Commissioner filed a timely objection to this report and recommendation. (Filing No. 23).

## II.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 72, the court reviews the Magistrate Judge's opinion *de novo*, determining for itself whether the Commissioner's decision is supported by substantial evidence and no error of law occurred. *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (explaining the court's role is limited to ensuring the ALJ applied the correct legal standards and their conclusion is supported by substantial evidence). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must also "not dismiss a line of evidence contrary to [their] ruling," and instead discuss why that evidence is not persuasive. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (explaining that when an ALJ simply dismisses a line of evidence contrary to their ruling and draws "improper inferences" from a lack of objective medical evidence, the Commissioner fails to give appropriate reasons for their decisions).

### III.    Discussion

At the outset, the court notes that Magistrate Judge Barr is correct that the ALJ's failure to use expert medical testimony to evaluate complex medical evidence was reversible error.  *See Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018) (explaining an ALJ "was not qualified to make [their] own determination [as to the meaning of recent MRI results] without the benefit of an expert opinion" and should "have sought an updated medical opinion").  While the standard of review is *de novo*, repetition of Judge Barr's explanation is unnecessary given her thorough explication of the relevant facts and case law.  The Commissioner objects to this analysis arguing it is inconsistent with governing legal authority.  She marshals two sources of authority: the agency's regulations and the Seventh Circuit's opinion in *Bakke v. Kijakazi*, 62 F.4th 1061 (7th Cir. 2023).  The Commissioner, however, misreads both the regulations and *Bakke*.

Agency regulations provide "if [a litigant's] case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing [their] residual functional capacity."  20 C.F.R. § 404.1546(c).  The Seventh Circuit has explained similarly: "[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."  *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014).  In the Commissioner's view, this means the ALJ can make an RFC determination without relying on expert medical testimony.  But that ignores that the ALJ's determination must be "based on *all* of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3) (emphasis added); *see also* SSR 96-8p (explaining the ALJ must make an RFC determination "based on all of the relevant evidence in the case

record").  And the ALJ cannot "play doctor" and draw conclusions from medical evidence without medical testimony.  *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (explaining "[t]he [ALJ's] critical failure, however, was the failure to obtain a medical report on the results of the 2010 MRI").  Only where the medical evidence is *not* "replete with technical language" can an ALJ interpret it without medical testimony.  *See Israel v. Colvin*, 840 F.3d 432, 439–40 (7th Cir. 2016) (noting the "danger when lawyers and judges attempt to interpret medical reports").  Thus, the ALJ ordinarily needs expert medical testimony to evaluate medical evidence.  *Id.*  And where the ALJ reaches a conclusion contrary to that suggested by certain medical evidence, the ALJ must provide an explanation for why that medical opinion testimony is not persuasive.  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) ("In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence in the record and must explain why contrary evidence does not persuade.").  That did not occur here.  (*See* Filing No. 7-16 at 13–14 (summarizing Nicklos' knee surgery and knee complications instead of explaining how the weight-bearing issues and pain did not affect his ability to stand and squat)).

Second, the Commissioner contends *Bakke* stands for the proposition "that an ALJ does not need to hire another medical expert whenever claimant submits the results of 'complex' medical tests after the final review by a state-agency physician." (Filing No. 23, Def.'s Obj. to Magistrate Judge's Report and Recommendation at 4).  However, *Bakke* explained that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the

reviewing physician's opinion." *Bakke*, 62 F.4th at 1066–67 (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). Only if the new medical diagnoses do not "undermine [previous medical] conclusions" can the ALJ rely on older assessments for the "substantial evidence" necessary to support their decision. *Id.* at 1067 (quoting *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021)) (alteration in original).

The Commissioner also frames *Bakke* as allowing the ALJ to refuse to gather additional medical opinions so long as the Plaintiff does not come forward with testimony suggesting their medical evidence is concerning, but this is not correct. *Bakke* turned on affirmative medical testimony explaining the plaintiff was getting better, not on the lack of testimony expressing concern the plaintiff was getting worse. *Id.* at 1067 (explaining that treating physicians' "mild reactions [to the new medical evidence] show[ed]" the new medical evidence could not have reasonably changed the state agency physicians' opinions). This is important because the ALJ needs expert medical testimony to interpret complex medical tests. *Israel*, 840 F.3d at 439–40. Accepting the Commissioner's view of *Bakke* would improperly allow an ALJ to play doctor by allowing the ALJ to determine whether the medical evidence showed improvement without expert medical opinions. *But see Moreno*, 882 F.3d at 729 (remanding to the agency because the Seventh Circuit could not "accept the agency's argument that the newer mental-health records would not have made a difference because they showed improvement. This argument is based on the ALJ's own assessment of the more recent records" rather than expert medical opinions) (citing *Meuser v. Colvin*, 838 F.3d 905, 911

(7th Cir. 2016) (remanding because "the ALJ improperly played doctor when he ignored expert opinions to arrive at his own")).

Ultimately, on its facts, *Bakke* enervates, rather than bolsters, the Commissioner's position.  The ALJ in *Bakke* could rely on older state agency assessments because two doctors explained that the new medical evidence indicated "there was nothing serious going on in the spine" and that Bakke was "definitely better than before surgery." *Id.*  In other words, expert medical testimony from two doctors contemporary with the new medical tests explained why the new tests did not indicate the claimant was trending toward being disabled. *Id.* at 1066–67.  There is no expert medical opinion in this record indicating Nicklos was better after surgery; the ALJ drew her own conclusions.[4]  *Cf. Durham v. Kijakazi*, 53 F.4th 1089, 1095 (7th Cir. 2022) (affirming district court's decision that affirmed Commissioner's denial of benefits because "the ALJ did not attempt to interpret, on his own, the significance of any . . . medical tests or procedures," but rather "relied, as he should, on the conclusions of [plaintiff's] treating physicians").

The medical opinions that are in the record indicate Nicklos required minor surgery after an MRI of his knee showed a posterior horn medial meniscus tear after Nicklos reported popping, locking, and swelling in his knee.  (Filing No. 7-30 at 40). Following surgery, the physician that treated Nicklos noted Nicklos continued to have trouble with his knee, meaning it continued to pop, lock, and swell.  (*Id.* at 2–5).  Indeed,

---

[4] As Magistrate Judge Barr explained, some of the ALJ's analysis is simply a recitation of the treating physicians' conclusions, while other parts involve the ALJ's own assessment of medical evidence.

Nicklos' right knee continued to have "an inability to bear weight," and his knee would swell and stay swollen even after laying down for the night.  (*Id.* at 2, 5).  Put succinctly, the medical testimony suggests the surgery was not successful and Nicklos was experiencing pain, swelling, and difficulty bearing weight with his right knee.  As *Bakke* explains, an ALJ cannot rely on older medical diagnoses when new, significant medical evidence undermines those conclusions.  *Bakke*, 62 F.4th at 1066.  Thus, newer medical testimony was required to find Nicklos' deteriorating knee did not render him disabled on the facts present here.[5]  *See Israel*, 840 F.3d at 440 (holding medical "records should be reviewed by a physician to determine whether they are in fact consistent with [plaintiff's] claim of disability" where "no physician in the record has opined on whether these results are consistent with [plaintiff's] claim of disabling pain" and where "the reports are replete with technical language that does not lend itself to summary conclusions").

The court concludes by emphasizing the narrowness of this decision.  The Commissioner nearly found Nicklos was disabled, as being able to stand for one less minute per workday would have rendered him disabled.  (*Compare* Def.'s Obj. at 13 n.2 (explaining that Nicklos "might have been found *per se* disabled . . . if he could stand and/or walk less than six hours per workday), *with* Filing No. 7-16 at 13 (concluding

---

[5] The court has focused on Nicklos' most recent medical evidence regarding his knee given that it provides the most straight forward example of the ALJ's error.  However, these same arguments apply with equal force to the other three categories of new medical evidence—a 2021 MRI of Nicklos' cervical spine relating to his multiple sclerosis diagnosis, a 2021 cardiac angiogram, and a 2021 MRI of Nicklos' brain.  (*See* Magistrate Judge's Report and Recommendation at 10–12 (explaining why all four categories of evidence should be subjected to medical scrutiny on remand)).  All relevant medical evidence should be subjected to medical scrutiny so that the ALJ can have substantial evidence to support her finding of Nicklos' residual functional capacity.

Nicklos "could stand for two hours at a time for a total of six hours in an eight-hour workday, with customary breaks")).  And Nicklos had an unsuccessful knee surgery that failed to fix popping, clicking, swelling, locking up, and pain in his right knee.  Even post-surgery, these symptoms worsened with movement and required him to sit down and stretch.  Given these facts and how close Nicklos was to being found disabled, the 2021 medical tests are "new and potentially decisive medical evidence" that should have been considered by medical experts.  *McHenry*, 911 F.3d at 871.  But that is a fact intensive determination that turned on the particulars of this case.

## IV.   Conclusion

For the reasons discussed above, the Commissioner's Objections to the Magistrate Judge's Report and Recommendation (Filing No. 22) are **OVERRULED** and the Magistrate Judge's Report and Recommendation (Filing No. 20) is **ADOPTED**.  The decision of the Commissioner is **REVERSED**, and the case is **REMANDED** to the agency for another determination not inconsistent with these proceedings.

**IT IS SO ORDERED** this 18th day of September 2023.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsels of Record.